677 So.2d 76 (1996)
James LOYD, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 94-02816.
District Court of Appeal of Florida, Second District.
July 19, 1996.
S. Grant Halliday, Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Johnny T. Salgado, Assistant Attorney General, Tampa, for Appellee.
RYDER, Acting Chief Judge.
While on probation, James Loyd, Jr. was convicted of possession of cocaine. The trial court revoked his probation based on this conviction. On appeal, Loyd argues that the evidence was insufficient to prove he was in constructive possession of the contraband. We agree with his contention, and reverse his conviction.
*77 Pursuant to a search warrant, deputies from the Hillsborough County Sheriff's Office searched the building where Loyd lived and worked. The structure contained both an automobile body shop and living quarters. Loyd was not present when the search took place, but four other people were, two in the shop and two in the residential section. In their search of the residence, the deputies found baggies containing cocaine and marijuana residue inside a dresser located in a room described at trial as the "pool table room." Additionally, the deputies found a spoon containing cocaine residue in the master bedroom. At trial, Detective Lingo stated he found the spoon on a nightstand, but his written report indicated he located it inside the nightstand.
Loyd returned home while the deputies were still at the building. He denied knowledge of the contraband, and told Detective Lingo that another man had previously lived at the property, and that he had been arrested. He also stated he shared the residence with his girlfriend, Mary Ann Riley. There was some dispute at trial about whether Ms. Riley actually lived with Mr. Loyd on the date of the search. Detective Lingo testified she told him that she and Mr. Loyd had been fighting and that she had moved out the night before. The search warrant, however, stated that the premises were "presently occupied by or under the control of" Loyd and Riley. The police had received information from a confidential informant three days before the search that Ms. Riley lived at the address. At trial, Ms. Riley claimed she had slept at the residence the night before the search. She also testified that the nightstand in the bedroom belonged to the former resident and that neither she nor Mr. Loyd used it to store their belongings. Both she and Mr. Loyd testified that the dresser in the pool table room belonged to friends who were storing furniture with them, and that they did not use the dresser to store their belongings. They also both denied knowing about or possessing the contraband found in the residence. Ms. Riley stated that employees of the body shop, customers and friends had access to the residence, primarily for the purpose of using the bathroom. Lester Smith, an employee of the body shop who was present during the search, corroborated this testimony.
The trial court viewed this as a case of exclusive possession. We disagree. Loyd was not in actual possession of the contraband at the time the police searched the residence. See Clark v. State, 670 So.2d 1061 (Fla. 2d DCA 1996). In fact, Loyd was not even at home when the deputies conducted the search. We, therefore, analyze this as a constructive possession case. In order for the state to show constructive possession, it must prove that the defendant: (1) knew of the presence of the drugs; (2) knew of their illicit nature; and (3) had dominion or control over the drugs. See Brown v. State, 428 So.2d 250, 252 (Fla.1983), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983). If the place where the drugs are found is in joint rather than exclusive possession, the accused's knowledge of and ability to control the contraband will not be inferred from his possession of the premises, but rather must be established by independent proof. Brown; Williams v. State, 529 So.2d 345, 347 (Fla. 1st DCA 1988).
As in Williams, the evidence here showed that Loyd's girlfriend and others had access to the areas where the deputies discovered the contraband. Detective Lingo testified that two people were in the pool table room when he arrived to conduct the search, even though Loyd was not at home. Although no one was in the master bedroom, the door was open. Because the building was not in Loyd's exclusive possession, the state was required to present independent proof of the elements of knowledge and control. This proof could consist of evidence establishing that Loyd had actual knowledge of the presence of the drugs, or evidence of incriminating statements and circumstances from which the trier of fact could infer such knowledge. See generally Brown, 428 So.2d at 252 (knowledge shown when marijuana, hashish and PCP scattered around house in plain view and defendant present at time contraband discovered); Williams, 529 So.2d at 347 (knowledge could be shown by evidence of defendant's fingerprints on contraband or testimony that he had been seen *78 with the drugs); Wale v. State, 397 So.2d 738, 740 (Fla. 4th DCA 1981) (knowledge shown when contraband found in defendant's bedroom closet in box bearing his name and address). Here, the state presented no direct evidence connecting Loyd with the drugs. None of the evidence seized was submitted for fingerprint analysis, no evidence showed the drugs were found in proximity to belongings known to be Loyd's, no testimony placed the drugs in Loyd's possession, and he denied knowledge of the drugs from the first time the deputies questioned him. Even assuming, as Detective Lingo testified, that the spoon on the nightstand was in plain view, and further assuming that the cocaine residue was visible, this evidence does not establish Loyd's knowledge of the drug because he was not present when the spoon was discovered, and two other people were in the residence during his absence.
Because the state failed to prove that Loyd was in constructive possession of the drugs found at his residence, we reverse his conviction for possession of cocaine. The transcript indicates that the court found a violation of probation based solely on this conviction. Accordingly, we also reverse the revocation of probation.
Reversed and remanded.
DANAHY and PATTERSON, JJ., concur.